## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HAROLD YOUNT and | ) | |
| BRENDA YOUNT, individually and | ) | |
| on behalf of others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 5:23-cv-150 |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | |
| TRAVELERS PERSONAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Harold Yount and Brenda Yount, individually and on behalf of others similarly situated (collectively "Plaintiffs"), and for their Class Action Complaint against Defendant Travelers Personal Insurance Company ("Defendant" or "Travelers"), state and allege the following:

### OVERVIEW OF CLAIMS

1.      This is a class action case arising out of a dispute between policyholders and their property insurer, Travelers. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be "depreciated" by Travelers when Travelers calculates its actual cash value ("ACV") payment obligations for structural property losses.

2.      This lawsuit does not contest that labor used to make a building product (such as a window or electrical outlet) become "embedded" within the building product or home and can be depreciated as part of an ACV calculation.

3.      Future labor is at issue because, pursuant to Travelers' property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder

undertaking repairs to a damaged structure. In contrast to ACV coverage, replacement cost value coverage payments ("RCV") are made retrospectively, after repairs have been completed.

4.    Most property insurers in Texas do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers in Texas do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld—*i.e.*, a form that expressly uses the terms "labor" and "depreciate" or "depreciation" and addressing the issue within the text of the policy or endorsement. Others, such as Travelers, withhold future labor as depreciation even under policies that do not contain such provisions. Travelers' policies at issue did not include any provision or language that allow it to withhold labor as depreciation when making ACV payments for structural loss claims.

5.    The issue presented is a question of law (whether labor may be depreciated in the absence of a labor depreciation permissive form) and was recently addressed by the Fifth Circuit Court of Appeals in *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700 (5th Cir. 2020) (interpreting Mississippi law); as well as by the U.S. District Court for the Western District of Texas in *Sims v. Allstate Fire & Cas. Co. et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023) (Pulliam, J.) (applying Texas law).

6.    In *Mitchell*, the Firth Circuit held that both the insurer and insured's interpretations of the otherwise undefined phrase "actual cash value" were reasonable, thus the policy was ambiguous and must be construed in favor of the insured. *Id.* at 703, 707.

7.    The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same as it relates to all of the contractual interpretation issues before the

Court. *Sims*, 2023 WL 175006, at *4 ("The Fifth Circuit's holding in *Mitchell* is dispositive because Texas law and Mississippi law are the same with regard to contractual interpretation and are substantially similar with regard to the definition and interpretation of 'actual cash value.'"). The chart below compares the consistency between the two States:

| **Issue** | ***Mitchell v. State Farm***<br>**(Mississippi)** | **Case Before the Court**<br>**(Texas)** |
|---|---|---|
| Determination of whether an insurance policy term is ambiguous | Under Mississippi law, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured. *Mitchell v. State Farm Fire & Cas. Co.,* 954 F.3d 700, 705-06 (5th Cir. 2020). | "As shown in *Mitchell*, under Mississippi law as in Texas, if the ordinary meaning of a subject term is susceptible to more than one reasonable interpretation, the term shall be considered ambiguous and construed in favor of the insured." *Sims v. Allstate Fire & Cas. Co. et al.*, No. SA-22-CV-00580-JKP, 2023 WL 175006, at *4 (W.D. Tex. Jan. 11, 2023) (Pulliam, J.). |
| Interpretation of ambiguous provisions within insurance policies | Under Mississippi law, "ambiguity and doubt in an insurance policy must be resolved in favor of the insured." *Mitchell*, 954 F.3d at 705 (citing *Bellefonte Ins. Co. v. Griffin*, 358 So. 2d 387, 390 (Miss. 1978)). | Under Texas law, when an insurance policy is ambiguous, courts "must resolve the uncertainty by adopting the construction that most favors the insured." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |
| When a policy provision is ambiguous | "[W]e need only determine whether [the insured's] interpretation is a reasonable one—not necessarily the most reasonable. *Mitchell*, 954 F.3d at 706 (citing *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981)). | If both the insured and insurer "present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." Uncertainty must be resolved in favor of the insured "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citations omitted). |

8.     This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiffs' and putative class members' ACV payments.

## PARTIES, RESIDENCY, JURISDICTION AND VENUE

9.     Plaintiffs Harold Yount and Brenda Yount are husband and wife. Plaintiffs are citizens and residents of Boerne, Texas. At all times relevant hereto, Plaintiffs owned the dwelling and other structures located at 206 Roosevelt Ave., Boerne, Texas 78006 (the "Insured Property").

10.    Defendant Travelers Personal Insurance Company is an insurance company organized and existing under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut. Defendant is a subsidiary or affiliate of The Travelers Indemnity Company. Travelers is authorized to sell property insurance policies in the State of Texas, including within this judicial district.

11.    Travelers engaged in the contractual breaches described herein in a uniform matter and pursuant to a uniform policy.

12.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of Traveler's property insurance policyholders who are similarly situated.

13.    The events giving rise to the individual claims asserted by Plaintiffs that are the subject of this action occurred in the Western District of Texas. Travelers has insurance agents in the Western District of Texas for the conduct of its usual and customary business, including the sale and servicing of property insurance policies and the handling and payment of claims associated with those policies of insurance.

14.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). There are more than 100 members in the proposed class and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.    This Court has personal jurisdiction over Travelers because Travelers has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Texas.

## FACTS

### A.    Introduction and Scope of Lawsuit

16.    Travelers sells property insurance coverage for, *inter alia*, homes and buildings in Texas. This lawsuit only concerns first-party insurance coverage for structures located in Texas.

17.    This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

18.    Further, this lawsuit only concerns claims wherein Travelers itself accepted coverage and then Travelers chose to calculate its ACV payment obligations exclusively pursuant to the replacement cost less depreciation ("RCLD") methodology.

### B.    Plaintiffs' Insurance Policy and Loss

19.    Plaintiffs contracted with Travelers for an insurance policy providing coverage for certain losses to the Insured Property. The policy number was 6091 12372 633 1 (the "Policy").

20.    Plaintiffs paid Travelers premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

21.    On or about May 28, 2021, the Insured Property suffered damage covered by the Policy. The damage to the Insured Property required replacement and/or repair.

22.     Plaintiffs timely submitted a claim to Travelers requesting payment for the covered loss.

23.     Travelers determined the loss to the Insured Property was covered by the terms of the Policy.

24.     Travelers calculates its actual cash value payment obligations to its policyholders for structural damage loss by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or RCV), and then Travelers subtracts the estimated depreciation.

25.     The Policy, and the other property forms at issue in this pleading, do not permit the withholding of labor as depreciation as described below. Certain policies of insurance expressly allow for the depreciation of "labor" as described herein, such as the roof systems payment schedule endorsement that was a part of Plaintiffs' Policy. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form.

26.     With the exception of an endorsement that allows depreciation of labor only as "roof systems," Plaintiffs' Policy does not contain a labor depreciation permissive form.

**C.     Travelers' Calculation of Plaintiffs' ACV Payment**

27.     In adjusting Plaintiffs' claims, Travelers affirmatively and unilaterally chose to use a RCLD methodology to calculate Plaintiffs' losses and to make Plaintiffs' ACV payment. Travelers did not use any other methodology to calculate Plaintiffs' ACV payment. The Policy, itself, adopts the RCLD method for determining ACV.

28.     Travelers did not calculate any portion of Plaintiffs' losses by reference to or analysis of any alleged increase or decrease in the market value of their homes, or the market value of any portion of their property.

29.     Travelers did not conduct an appraisal of Plaintiffs' loss.

30.     Travelers did not conduct an appraisal of the Plaintiffs' property.

31.     Travelers has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

32.     Soon after Plaintiffs' loss, Travelers sent an adjuster to inspect the damage and estimate ACV.

33.     Travelers used a commercially available computer software to estimate Plaintiffs' RCV, depreciation, and ACV calculations. The software used to calculate the payment to Plaintiffs is called Xactimate®.

34.     As set forth in the written Xactimate® estimate provided to Plaintiffs, Travelers determined that Plaintiffs had suffered covered losses to their property. The Xactimate® estimate generated by Travelers included the estimated cost of materials and future labor required to complete the repairs (the RCV).

35.      In calculating its ACV payment obligations to Plaintiffs, Travelers utilized Xactimate® to determine the depreciation to subtract from the RCV.

36.     Plaintiffs were underpaid on their ACV claim and deprived of the use of their money from the time they should have received full ACV payment until the date they actually recovered the wrongfully withheld amounts, as more fully described below.

**D.     Travelers' Practice Of Withholding Future Labor As Depreciation**

37.     For Plaintiffs and the putative class members, Travelers used Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and is also used to calculate depreciation to determine ACV payments under the RCLD methodology.

38.    The only methodology used by Xactimate® to calculate ACV payments for structural damage is the RCLD methodology.

39.    Travelers unfairly manipulates Xactimate® to withhold future labor from ACV payments.

40.    Xactimate® generates its estimate prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

41.    When adjusting property insurance claims with Xactimate®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the drywall, siding, or other damaged building materials.

42.    The Xactimate® software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

43.    Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software user to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



44.    When Travelers calculated Plaintiffs' ACV benefits owed, Travelers withheld costs for both the materials and future labor required to repair Plaintiffs' property as depreciation, even though labor does not depreciate in value over time. Travelers withheld labor costs as depreciation throughout its ACV calculations as depreciation.

45.    In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and contractors/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

46.    Travelers' withholding of future labor costs as depreciation resulted in Plaintiffs receiving payment in an amount less than what they were entitled to receive under their Policy. Travelers breached its obligations under Plaintiffs' Policy by improperly withholding the future cost of labor as depreciation.

47.    Without expert assistance, Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating program at issue (Xactimate®), as well as the electronic file associated with the respective estimate.

48.    While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a replacement cost less depreciation methodology.

49.     Travelers' failure to pay the full cost of the labor necessary to return Plaintiffs' structures to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their losses.

50.     Future labor which has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

51.     Travelers materially breached its duty to indemnify Plaintiffs by withholding future labor costs from ACV payment as depreciation, thereby paying Plaintiffs less than they were entitled to receive, including but not limited to depriving Plaintiffs of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

## AMOUNT IN CONTROVERSY

52.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

53.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

54.     The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All Travelers Personal Insurance Company policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in Texas; and

(2) for which Travelers accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means application of either the "depreciate removal," "depreciate non-material" and/or "depreciate O&P" option settings within Xactimate® software or similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance was exhausted by the initial actual cash value payment. The class also excludes any claims or portions of claims arising under labor depreciation permissive policy forms, *i.e.*, those forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form.

55.     Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Travelers and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

56.     Plaintiffs and members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies, if any. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

57.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe hundreds or thousands of people geographically

dispersed across Texas have been damaged by Travelers' actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Travelers or from information readily available to Travelers.

58.    The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

59.    Travelers has acted on grounds generally applicable to the proposed class in that Travelers has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect Travelers will continue to withhold labor to reduce the amount they pay to its insureds under these policies absent this lawsuit.

60.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.    Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the replacement cost less depreciation methodology;

b.    Whether applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.    Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

d.    Whether Travelers has a custom and practice of withholding future labor costs in the calculation of ACV payments;

> e.    Whether Plaintiffs and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

> f.    Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

61.    Plaintiffs' claims are typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

62.    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be a class representative.

63.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most,

members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

64.      In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

65.      Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to

them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

66.     Class certification is further warranted because Travelers has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

67.     Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COMPLIANCE WITH STATUTORY PREREQUISITES

68.     In compliance with Chapter 542A of the Texas Insurance Code and any other statutory requirements, Plaintiffs, on behalf of themselves and the putative class, gave Travelers notice of their intent to pursue this action. Notice was sent via written letter dated September 16, 2022 and on January 30, 2023 (the "Notices").

69.     The Notice included a statement of the acts or omissions giving rise to the claims, the specific RCV amount alleged to be owed to Plaintiffs for damage to or loss of their covered property (as well as the amounts owed to Plaintiffs and putative class members, *i.e.*, the improperly withheld labor costs), as well as the amount of attorneys' fees and expenses incurred as of the date of the Notices.

70.     Copies of the Notices were sent to Plaintiffs, and the Notices themselves included a statement that copies of the Notices were provided to the claimants.

## COUNT I
## BREACH OF CONTRACT (Class Action)

71.     Plaintiffs restate and incorporate by reference all preceding allegations.

72.     Travelers entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between Travelers and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

73.     These policies of insurance are binding contracts under Texas law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

74.     Travelers drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when Travelers calculates ACV under a RCLD methodology.

75.     In order to receive or be eligible to receive ACV claim payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policy.

76.     Travelers breached its contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor costs as described herein.

77.     Travelers' actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

78.     In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

**COUNT II**
**BREACH OF CONTRACT (Individual Claim)**

79.     Plaintiffs restate and incorporate by reference all preceding allegations.

80.     The Policy issued by Travelers is a binding contract supported by valid consideration.

81.     Travelers is in total, material breach of each of the Policy issued to Plaintiffs and is liable to Plaintiffs for the maximum allowed by the Policy for the direct physical loss and damage caused by the covered loss at issue, along with other loss, damage, and expense covered by the terms and conditions of the policies, less the deductible and payments previously made. Specifically, Travelers breached its contract by its failure and refusal to fully and promptly pay the amounts owed to Plaintiffs as required by the terms of the Policy at issue. To date, Travelers has failed to make full payment to Plaintiffs.

82.     As a result of Travelers' breach of contract, Plaintiffs have sustained compensable losses, including loss and damage covered by the terms of Plaintiffs' Policy as well as consequential damages arising from the ongoing delay in payment. As a result of Travelers' breach of contract, Plaintiffs were prevented from timely completing the necessary repairs.

83.     Travelers is liable to Plaintiffs for Plaintiffs' losses.

## COUNT III
## NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
## UNFAIR SETTLEMENT PRACTICES (Individual Claim)

84.     Plaintiffs restate and incorporate by reference all preceding allegations.

85.     Travelers' conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a). All violations under this article are made actionable by TEX. INS. CODE §541.151.

86.     Travelers' unfair settlement practice, as described above, of misrepresenting to Plaintiffs material facts relating to the coverage at issue, constitutes an unfair method of

competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(1).

87.     Travelers' unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Travelers' liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(2)(A).

88.     Travelers' unfair settlement practices, as described above, of failing to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(3).

89.     Travelers' unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(4).

90.     Travelers' unfair settlement practices, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(a)(7).

91.     Each of the foregoing unfair settlement practices were completed knowingly by the Travelers and were a producing cause of Plaintiffs' injuries and damages.

**COUNT IV**
**NONCOMPLIANCE WITH TEXAS INSURANCE CODE:**
**THE PROMPT PAYMENT OF CLAIMS (Individual Claim)**

92.    Plaintiffs restate and incorporate by reference all preceding allegations.

93.    The claim is a claim under an insurance policy with Travelers of which Plaintiffs gave proper notice.  Travelers is liable for the Claim.  Lemonade's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims.  All violations made under this article are made actionable by TEX. INS. CODE §542.060.

94.    Travelers' failure to acknowledge receipt of Plaintiffs' claim, commence investigation of the claim, and/or request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of claims and a violation of TEX. INS. CODE §542.055.

95.    Travelers' failure to notify Plaintiffs in writing of its acceptance or rejection of the claim within the applicable time constraints, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.056.

96.    Travelers' delay of the payment of Plaintiffs' claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for, as described above, constitutes a non-prompt payment of the claim.  TEX. INS. CODE §542.058.

97.    Each of the foregoing unfair settlement practices were completed knowingly by the Travelers and were a producing cause of Plaintiffs' injuries and damages.

**COUNT V**
**BREACH OF GOOD FAITH AND FAIR DEALING (Individual Claim)**

98.    Plaintiffs restate and incorporate by reference all preceding allegations.

99.     Travelers breached the common law duty of good faith and fair dealing owed to Plaintiffs by denying or delaying payment on the Claim when Travelers knew or should have known that liability was reasonably clear.

100.     Travelers' failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Travelers knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

101.     Travelers' conduct proximately caused Plaintiffs' injuries and damages.

**COUNT VI**
**DECLARATORY JUDGMENT AND RELIEF (Class Action)**

102.     Plaintiffs restate and incorporate by reference all preceding allegations.

103.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

104.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

105.     Plaintiffs and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

106.     Plaintiffs seek, individually and on behalf of the proposed class, a declaration that the applicable insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

107.     Plaintiffs further seek, individually and on behalf of the proposed class, any and all other relief available under the law arising out of a favorable declaration.

108.    Plaintiffs and members of the proposed class have and will continue to suffer injuries.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.    Enter an order certifying this action as a class action, appointing Plaintiffs as the representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.    Enter a declaratory judgment, declaring that Travelers' withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiffs and members of the putative class;

3.    Enter a declaration, and any preliminary and permanent injunction and equitable relief against Travelers and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.    Enter an order that Travelers specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of their past and present practices complained of herein;

5.    Award compensatory damages for all sums withheld as non-material depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.    Award compensatory damages, statutory benefits, treble damages, attorney's fees, exemplary and punitive damage to Plaintiff, individually, for all amounts to which she is entitled;

7.    Award attorney's fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

8.    Pre- and Post-Judgment interest; and

9.    Grant such further and additional relief as the Court deems necessary and proper.

Respectfully submitted,

/s Shaun W. Hodge_____
Shaun W. Hodge
Texas Bar No. 24052995
shodge@hodgefirm.com
The Hodge Law Firm, PLLC
The Historic Runge House
1301 Market Street
Galveston, Texas 77550
Telephone: (409) 762-5000
Facsimile: (409) 763-2300

***Attorney for Plaintiffs and
Putative Class Representatives***